Robert L. **SANFORD** and Elda G. Sanford, Plaintiffs–Respondents,

v.

Gertrude M. **WILSON**, Defendant–Appellant.

No. 15576.

Missouri Court of Appeals, Southern District, Division One.

Feb. 6, 1989.

**716**

David A. Yarger, Kevin Schehr, Woolsey and Yarger, Versailles, for defendant-appellant.

Richard E. Duggan, Sunrise Beach, for plaintiffs-respondents.

HOLSTEIN, Chief Judge.

Defendant Gertrude M. Wilson appeals from an adverse judgment in a case in which plaintiffs Robert L. Sanford and Elda G. Sanford were granted a permanent injunction enjoining defendant from fencing or barricading a portion of a roadway and further ordering that defendant remove an existing fence from the roadway. Two points are raised on appeal.

The first is that the trial court erroneously admitted a survey in evidence which was not shown to have commenced at a government corner, pursuant to cases construing § 60.150.[1] The second point is that the "trial court erred in ruling in favor of plaintiffs ... in that in so ruling the trial court relied upon a distance call in a legal description instead of an artificial monument ... because artificial monuments control over courses and distances...." As in other court-tried cases, our review is limited by the standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We give deference to the trial court's superior opportunity to judge the credibility of the witnesses. Rule 73.01(c)(2). When the trial court has received conflicting evidence, we review the facts in a light most favorable to the court's order. In *Interest of M.E.W.*, 729 S.W.2d 194, 196 (Mo. banc 1987). Defendant's brief and argument would have us ignore these fundamental principles.

The roadway in question has been designated by the county as Lake Road 7–13. The first reference to the road was found in a conveyance of right-of-way from Union Electric to Camden County in 1932. The roadway was 40 feet in width and crossed portions of Lots 4 and 5 of the Northwest Quarter of Section 3, Township 39, Range

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1986, and all rule references are to Missouri Rules of Court (20th ed. 1989).

18 West, terminating at the Lake of the Ozarks.[2] From the point where the roadway enters Lot 5 on the west, it follows a southeasterly course to the westernmost point of the disputed portion of roadway. From there, the road runs generally northeasterly 379 feet along the Wilson property which lies southeast of and adjoins the roadway. The crux of the dispute between the parties is the location of the boundary between the roadway and the Wilson property.

■ The evidence in this case indicates that Mrs. Wilson bought her property in 1968. Sometime thereafter, she had the property surveyed and concluded that the northern boundary of her property extended several feet beyond a small embankment running parallel to the road. She visited her property primarily on weekends. During her first visit in 1984, she noticed that someone had "graded a swath about six feet wide off [her] property." That conduct prompted her to construct a chain-link fence.

Defendant's evidence indicated the road had never been wide enough for two cars to pass because of large cedar trees located in close proximity to the road, that Mrs. Wilson had mowed grass in the area that is now enclosed by her fence, and the area under fence had not been used or maintained by the county.

According to a former county commissioner, Vaughn Morgan, he and a county employee removed some rocks that had been strung out along the roadway where Mrs. Wilson later constructed her fence, and the road graders went in and graded the roadway to the width the road had been since Morgan became familiar with the road in 1979.

The plaintiffs and other witnesses called on their behalf testified that since the 1950's, the disputed portion of roadway followed the same course, was graded by the county, and was wide enough for two cars to pass. There was substantial evidence confirming that the chain-link fence constructed by Mrs. Wilson in 1984 is locat-

ed and encroaches upon an area running approximately 379 feet in length and 8 to 9 feet in width which was previously used by the public and maintained by the county as a roadway.

Section 228.190 provides one method by which roads may be established. That section provides in pertinent part:

[A]ll roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads....

This court recently held that the width of roads so established extends beyond the beaten path to those areas adjacent to the traveled portion upon which public labor or funds have been expended and which have been necessarily and actually used to support and maintain the road. *Patterson v. Null*, 751 S.W.2d 381, 387 (Mo.App.1988). Applying those principles to this case, and assuming the trial judge believed the plaintiffs' evidence, the trial court could find that the fence constructed by Mrs. Wilson encroached upon an established public roadway.

■ The defendant's argument assumes that if a survey, designated plaintiffs' Exhibit 6, was inadmissible, or if the description offered by plaintiffs was flawed, the trial court could not enjoin Mrs. Wilson from obstructing the roadway with the chain-link fence. As demonstrated by the evidence noted above, neither the survey nor the legal description were necessary to support a finding that Mrs. Wilson's fence encroached upon an established public roadway. Thus, the granting of injunctive relief may still be appropriate. However, for reasons discussed hereafter, the judgment lacks finality, without which we have no jurisdiction over this appeal. We examine our jurisdiction on appeal *sua sponte. Maurer v. Clark*, 727 S.W.2d 210, 210 (Mo.App.1987); *Citizens Elec. Corp. v. Campbell*, 696 S.W.2d 844, 845 (Mo.App. 1985). An understanding of our ruling requires a discussion of Exhibit 6 and the

---

2. Hereafter, references to section, township and range will be omitted.

legal description used by the trial court in granting the injunction.

Exhibit 6 purports to be a land survey of Lots 4 and 5 prepared by Greg Hasty, a registered land surveyor, in 1985. According to Hasty, he located a corner for the beginning of his survey based upon a survey done by a former county surveyor, Ralph Vincent. Vincent's survey was performed in December, 1950. According to Vincent's survey, a "set stone" was located at the northwest corner of the east half of Lot 4. However, Vincent's survey was not tied to any established or reestablished government corner. Hasty claims to have located a sandstone with an "X" on it at the same location noted in Vincent's survey. Hasty concluded that this sandstone was a government corner. From the sandstone, he measured north 22 feet, then followed other courses and distances called for "in the deeds of record" to the point where the roadway adjoins the defendant's property. Hasty's survey notes the relative location of defendant's fence to the roadway. According to the survey, the chain-link fence encloses a portion of the roadway. Hasty drafted a description of a strip of ground 8 feet wide and approximately 379 feet long lying within the newly constructed chain-link fence based upon his survey. The description drafted by Hasty, and thereafter adopted by the court, begins as follows:

> From the Northwest corner of the East half of said Lot 4, run North along the West line of the East half of Lot 5 of the Northwest quarter of said Section 3, a distance of 22.0 feet, more or less to the centerline of the county road, thence along said county road [various courses and distances] to the point of beginning....[3]

The half lot corner referred to in the above description and the survey was not shown to be an established or reestablished corner of the United States land survey. In accordance with the construction of §§ 60.115

and 60.150, the survey would ordinarily have no probative force in a dispute involving the real estate if a proper objection is interposed. *Carroz v. Kaminiski,* 467 S.W.2d 871, 872 (Mo. banc 1971); *Cantrell v. Bank of Poplar Bluff,* 702 S.W.2d 935, 938 (Mo.App.1985). However, a survey was introduced by the defendant which also relied on the stone set by Vincent as being located at the northwest corner of the east half of Lot 4. The defendant's survey was offered in evidence and received without objection. The statute contemplates that parties, as between themselves, may mutually consent that a monument depicted on a survey plat and actually existing on the ground is in fact located at a particular corner, even though not tied to an established government corner. *See* § 60.150. The fact that each party prepared and offered surveys which relied on Vincent's 1950 survey depicting the stone as the northwest corner of the east half of Lot 4 is ample indication that each consented to that aspect of the survey. The real dispute is over what courses and distances to follow after one leaves Vincent's stone.

All the evidence indicated that if a surveyor measures 22 feet north of Vincent's stone, he will not be in the middle of the county road, but will actually be some distance south of the center of the road. The center of the county roadway lies approximately 45 feet to the north of the sandstone marker. If one uses a distance of 22 feet and follows the courses and distances called for in Hasty's description, Mrs. Wilson's fence lies on the roadway. If one measures 45 feet to the center of the county road and then follows the same courses and distances, as did Mrs. Wilson's surveyors, her fence is not on the roadway. In the legal description adopted by the court in its injunction, reference is made to both a distance and to the centerline of the roadway. The description perpetuates the same ambiguity which created the controversy.

---

**3.** Among the anomalies in this case is that the original deed from Union Electric to Camden County made no mention of the half lot corner of which the sandstone purports to be a monument. Nevertheless, almost identical introductory language is used in the legal description in deeds of landowners adjoining the road, including the Wilson property. These deeds are apparently the "deeds of record" referred to by Hasty.

An analogous situation existed in *Wyma v. Kauffman*, 665 S.W.2d 82 (Mo.App.1984). There the trial court granted an injunction against an encroachment on a public roadway. The parties were not in agreement as to the precise extent of the offending encroachment. This court held that where a dispute exists as to the extent of an encroachment on a roadway, an injunction prohibiting the encroachment which fails to describe with clarity, precision, and specificity the extent of the offending encroachment is not a final judgment. In the absence of a proper legal description, neither the enjoined party nor others could ensure compliance. *Id.* at 84.

The injunction and the description adopted by the trial court in this case create an irreconcilable ambiguity. On one hand, the trial court apparently believed the Wilson fence encroached upon the roadway in that it granted the injunction. On the other hand, the court uses a legal description including a call for a distance which conflicts with a call for a monument. When a legal description in a conveyance purports to establish boundaries, a call for a quantity, course, or distance must, in case of conflict, yield to and be controlled by a call for a natural object, landmark or monument. *Prichard v. Hink*, 574 S.W.2d 30, 33 (Mo.App.1978). Because the distance and monument involved here do not in themselves establish a contested boundary, the application of the rule is questionable. However, following the rule stated in *Prichard*, the Wilson fence would not be on the roadway and the injunction would be ineffective to require removal of the fence. Neither the parties nor this court can know precisely what the trial court intended to enjoin until the ambiguity is resolved. As in *Wyma*, the absence of precision, clarity, and specificity robs this injunction of finality.

Accordingly, the appeal is dismissed for entry of a judgment either granting an injunction and unambiguously describing the area from which the encroachment is enjoined, or denying an injunction. Whether the trial court desires to hear additional evidence is left to the sound discretion of the judge.

CROW, P.J., and GREENE, J., concur.