UNION HILL HOMES ASSOCIATION, INC., Appellant,

v.

RET DEVELOPMENT CORPORATION, Respondent.

No. WD 60091.

Missouri Court of Appeals, Western District.

Aug. 27, 2002.

---

Russell C. Ashley, Kansas City, MO, for appellant.

Cindy Reams Martin, Lee's Summit, MO, for respondent.

Before ELLIS, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

This case arises out of a dispute between Union Hill Homes Association, the appellant, and RET Development Corporation, the respondent, relating to the construction by the respondent of single-family residences on three lots: 2978 Grand (owned by the respondent), 2913 Walnut, and 2911 Walnut, located in the Union Hill subdivision of Kansas City, Missouri. On September 17, 1998, the appellant's board of directors passed a resolution approving site plans submitted by the respondent for the construction of the three residences. However, the board's approval was subject to the condition that plans for landscaping, grading, sprinkler systems, etc., as well as samples of exterior building materials to be used, would have to be submitted to and approved by the appellant's Architecture Review Committee. In an apparent attempt to ensure the respondent's compliance with the requirements of the resolution, the resolution further provided that the respondent would give the appellant a

lien on each of the three lots. The resolution also included a provision that any ensuing disputes between the parties would be arbitrated pursuant to the rules of the American Arbitration Association.

On August 18, 1999, the appellant filed an application in the Circuit Court of Jackson County for a temporary restraining order (TRO), Case Number 99–CV–216360, to prohibit the respondent from further construction activities on the Union Hill properties. In support of its application, the appellant alleged that the respondent was engaging in landscaping, grading, and exterior building activities on the three subject properties without having first submitted the plans and samples pertaining to such activities for approval by the Architecture Review Committee, as required by the board resolution of September 17, 1998. On August 25, 1999, the respondent filed a motion asking the court to dismiss the appellant's application for TRO and compel arbitration of the appellant's claims pursuant to the arbitration provision in the September 17, 1998, resolution. The record does not indicate that the motion was ever ruled upon.

On August 27, 1999, the trial court took up and heard the appellant's application for TRO. After a recess in the hearing, the parties advised the court that they had reached a written settlement agreement, denominated "Agreement for Restrictive Covenant (2978 Grand)" (the Agreement). However, the parties requested that the court retain jurisdiction of the case pending the effectuation of the Agreement. The court agreed to retain the case on its docket until October 15, 1999, at which time the case was to be dismissed, unless otherwise requested by one or both of the parties.

The Agreement provided that, although the respondent had agreed to sell the real property at 2978 Grand to Mike and Pamela Whitman, the respondent would not convey title until the respondent had submitted plans on all three lots to the appellant for review and approval as required by the September 17, 1998, resolution; the improvements on all three lots were completed in accordance with the approved plans; and the respondent had repaired or paid for any damages resulting from its construction activities on the three lots. The Agreement also provided that, upon the respondent's compliance with these requirements, the appellant would execute a certificate of completion that such construction and repairs had been completed in accordance with the plans. The Agreement further provided that the parties, prior to instituting a court proceeding, would attempt to resolve any dispute regarding the appellant's issuance of the certificate of compliance through non-binding mediation.

On October 12, 1999, three days before the deadline established by the trial court for dismissing the pending case unless otherwise requested by one or both of the parties, the appellant filed a motion to retain the case on the docket, alleging that, although some progress had been made toward effectuating the Agreement, there continued to be conflict between the parties concerning the respondent's construction activities that "may require prompt referral to this Court for guidance or determination." The record does not indicate that the appellant's motion was ever ruled upon, but in any event, the record indicates that the case was not dismissed on October 15, 1999.

In November of 1999, as a result of the mediation provision in the Agreement, the parties engaged in four days of mediation that resulted in a "Memorandum of Agreement" (the Memorandum) that was signed by the appellant on November 11, 1999, and by the respondent on November 12,

1999. The Memorandum provided that the respondent would complete grading, irrigation, and landscaping requirements; as well as complete trim, column, and deck work; replace a driveway; and finish work on a circle drive light, a circle drive retaining wall, and a sidewalk entry. The Memorandum further provided that, if such work was completed as required, the appellant would then issue a certificate of compliance releasing its restrictive covenant on 2978 Grand.

On January 19, 2000, the respondent filed a motion with the trial court to enforce the Memorandum. The respondent alleged, in its motion, that the appellant had failed to perform its obligations under the Memorandum by refusing to issue the certificate of compliance that would release its restrictive covenant on 2978 Grand. The respondent further alleged that the appellant's failure to issue the certificate of compliance and release the restrictive covenant prevented it from closing with the Whitmans on the residence.

On January 21, 2000, the trial court held an evidentiary hearing on the respondent's motion to enforce the Memorandum. On that same date, the trial court entered its judgment ordering the parties to fully perform under that agreement, finding that the Memorandum was a valid and binding contract on the parties.

On February 4, 2000, the respondent filed a motion to hold the appellant in contempt, alleging that the respondent had performed all acts required by the Memorandum, but that the appellant still refused to issue the certificate of compliance. The motion further alleged that, because the certificate had not been issued, the respondent could not close on the residence at 2978 Grand, and as a result, the respondent was incurring damages in the amount of $42.51 per day in interest on a construction loan, as well as attorney's fees and expenses.

On June 5, 2000, the trial court took up and heard the respondent's motion for contempt, and entered a judgment on June 23, 2000, finding that the respondent had substantially complied with the January 21, 2000, judgment of the court and the Memorandum, but that the appellant had knowingly and voluntarily failed to comply therewith by failing to issue the certificate of compliance on 2978 Grand, by failing to release the lien thereon and by continuously refusing to comply with the judgment enforcing the Memorandum, and that such conduct was intentional and constituted contempt of court. To purge itself of contempt, the trial court ordered that:

> [W]ithin ten days of the date of this Order UHHA shall complete the following:
>
> 1. UHHA pay RET $4,756.53, the interest incurred by RET on the construction loans on the property at 2978 Grand,
>
> 2. UHAA [sic] pay RET $3609.76, for all costs and expenses incurred as part of this cause,
>
> 3. UHHA release the restrictive covenant on 2978 Grand Avenue, Jackson County, Missouri,
>
> 4. UHHA issue the Certificate of Compliance on 2978 Grand,
>
> 5. UHHA release the lien on the property at 2978 Grand, for any unpaid UHHA monthly dues owed by Michael and Paula Whitman,
>
> 6. UHHA immediately instruct all UHHA service providers to reinstate all services to the property at 2978 Grand.

On August 2, 2000, the appellant appealed to this court from the June 23, 2000, judgment of contempt. The appeal, WD 58870, was dismissed on August 31, 2000, on the

basis that the judgment appealed from was neither final nor otherwise appealable.

On September 12, 2000, the respondent filed an application for a writ of garnishment to collect on the June 23, 2000, judgment of contempt. On September 25, 2000, a writ of garnishment was issued for the amounts awarded in the contempt judgment, plus costs, for a total of $8,510.29. On October 5, 2000, the appellant filed a motion to quash the writ. The respondent filed its suggestions in opposition to the appellant's motion on or around October 18, 2000. In its suggestions, the respondent argued that the court should impose a per diem fine against the appellant for its continued failure to comply with previous court orders. On November 21, 2000, the trial court overruled the appellant's motion to quash the writ, and imposed a $150 per diem fine against the appellant, finding that:

   a. UHHA has failed and refused to pay RET $4,756.53, the interest incurred by RET on the construction loans on the property at 2978 Grand,

   b. UHAA [sic] has failed and refused to pay RET $3609.76, for all costs and expenses incurred as part of this cause,

   c. UHHA has failed and refused to release the restrictive covenant on 2978 Grand . . .

   d. UHHA has failed and refused to issue the Certificate of Compliance on 2978 Grand, and

   e. UHHA has failed and refused to release the lien on the property at 2978 Grand, for any unpaid UHHA monthly dues owed by Michael and Paula Whitman, which are being assessed to RET.

The court further ordered that the $150 per diem fine would continue until the appellant had (1) released the restrictive covenant on 2978 Grand, (2) issued the certificate of compliance on 2978 Grand, and (3) released the lien on the property at 2978 Grand.

On December 1, 2000, the appellant appealed to this court from the June 23, 2000, judgment of contempt, the November 21, 2000, order imposing a $150 per diem fine, and the November 21, 2000, order overruling the motion to quash garnishment. The appeal, WD 59328, was dismissed on January 5, 2001, on the ground that it was taken from a judgment that was neither final nor otherwise appealable.

Following the payout of the garnished funds as to the June 23, 2000, judgment of contempt, there remained three acts for the appellant to purge itself of contempt: (1) release the restrictive covenant on 2978 Grand, (2) issue the certificate of compliance on 2978 Grand, and (3) release the lien on the property at 2978 Grand. Those acts were performed by the appellant on May 18, 2001.

On May 24, 2001, the respondent sought a writ of garnishment in the amount of $26,700 to collect the $150 per diem fine which had accrued from November 21, 2000, through May 18, 2001, the date of purgation. The writ was issued on June 6, 2001.

This appeal followed, in which the appellant raises six claims for relief, each of which relates to the propriety of the contempt orders of the trial court. In that regard, the respondent contends that we lack jurisdiction to hear the appeal because the appellant purged itself of contempt on May 18, 2001, thereby rendering the case moot and unappealable. We agree.[1]

---

1. The appellant has also filed a motion, which we have taken with the case, to join additional parties or, in the alternative, strike the

### Appellate Jurisdiction

■ Before addressing an appeal on the merits, this court has a duty to *sua sponte* determine its jurisdiction. *Cook v. Jones*, 887 S.W.2d 740, 741 (Mo.App.1994). In this case, we conclude that the case is moot and unappealable, as the appellant has performed the acts required by the trial court to purge itself of contempt.

■ Civil contempt is a remedial action, coercive in nature, the purpose of which is to enforce a remedy ordered in a previous adjudication of the parties' claims. *McCubbin v. Taylor*, 5 S.W.3d 202, 210 (Mo.App.1999). Because the purpose of a civil contempt order is to induce the compliance with a prior judgment, the contemnor always has the power to terminate the coercive sanctions imposed by complying with the judgment of the court. *Teefey v. Teefey*, 533 S.W.2d 563, 566 (Mo. banc 1976). Accordingly, a party found in contempt has two options. First, the contemnor may comply with the court's order, thereby purging himself of contempt. *Wrob v. Watlow Elec. Mfg. Co.*, 878 S.W.2d 63, 65 (Mo.App.1994). If the contemnor chooses this option, the case becomes moot and unappealable. *Id.* Second, the contemnor may appeal the judgment of contempt. *Id.* However, the judgment of civil contempt does not become a final judgment for the purposes of appeal until that judgment is enforced by actual incarceration or imposition of a per diem fine. *Crenshaw v. Refuse Serv., Inc.*, 908 S.W.2d 845, 846 (Mo.App.1995). When a per diem fine is ordered as the method to coerce the compliance of a party found in civil contempt, the judgment of contempt is deemed enforced when the party asking for contempt enforces the fine by executing thereon. *21 W., Inc. v. Meadowgreen Trails, Inc.*, 913 S.W.2d 858, 883 (Mo.App.

1995); *City of Pagedale v. Taylor*, 790 S.W.2d 516, 518 (Mo.App.1990).

■ Applying the foregoing principles to our case, the trial court's June 23, 2000, judgment of contempt did not become a final judgment for the purposes of appeal until the per diem fine imposed to coerce compliance with that order was enforced by execution, which occurred on June 6, 2001. *21 W., Inc.*, 913 S.W.2d at 883; *City of Pagedale*, 790 S.W.2d at 518. Thus, the judgment remained interlocutory until May 18, 2001, when, by performing the acts which the trial court identified in its November 21, 2000, judgment as the only remaining acts required to purge itself of contempt, the appellant rendered the June 23, 2000, judgment of contempt moot and unappealable. *Wrob*, 878 S.W.2d at 65.

The appellant concedes, in its brief, that it performed the acts which the trial court identified in its November 21, 2000, judgment as the only acts required to purge itself of contempt. Nevertheless, the appellant argues that these acts of purgation did not render its appeal moot because the acts were involuntary, insofar as they were coerced by the garnishment of funds subsequent to the July 23, 2000, judgment of contempt and the November 21, 2000, imposition of the per diem fine. In support of this contention, the appellant cites *Two Pershing Square, L.P. v. Boley*, 981 S.W.2d 635, 638 (Mo.App.1998) which held that the payment of a judgment in a case adjudicating the question of a corporation's exemption from taxation was involuntary when made after execution or writ of garnishment, because it was presumed to have been made as a result of legal coercion, and thus did not render an appeal of that judgment moot. However, *Boley* is distinguishable from the instant case in that *Boley* did not involve a payment made to

respondent's brief. In light of our disposition of the appeal, that motion is now moot.

purge oneself of civil contempt, and the rationale for the rule articulated therein does not apply to judgments of civil contempt, as such a judgment is coercive by its very nature. *McCubbin,* 5 S.W.3d at 210.

### Conclusion

The appeal is dismissed for lack of appellate jurisdiction.

ELLIS, P.J., and HOWARD, J., concur.