SUPERLUBE INCORPORATED OF CAMDENTON and Ronald E. Adamson, Plaintiffs–Appellants–Respondents,

v.

INNOVATIVE REAL ESTATE, INC., Defendant–Respondent–Cross–Appellant.

Nos. 24940, 24963.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 24, 2003.

Michael A. Carter, Ronald K. Carpenter, Phillips, McElyea, Carpenter & Welch, P.C., Camdenton, for Appellants.

Jeffrey E. Green, Florissant, for Respondent.

KENNETH W. SHRUM, Judge.

This case arises from a dispute over a road easement that Ronald E. Adamson ("Ronald") claims across land owned by Innovative Real Estate, Inc. ("Innovative"). The easement serves real estate in which Ronald has an ownership interest and is used by customers of Superlube Incorporated of Camdenton ("Superlube"). Ronald is the sole shareholder of Superlube.[1] The trial court enjoined Innovative from "blocking Plaintiffs' use of the easement along the existing driveway as described in the Amended Driveway Easement of record[,]" but denied Plaintiffs' claims for damages and attorney fees.

In No. 24940, Plaintiffs appeal and claim the trial court erred by not awarding them

---

1. When referring collectively to Ronald and Superlube, we call them "Plaintiffs."

damages and attorney fees. In No. 24963, Innovative appeals and alleges the trial court erred by granting Plaintiffs injunctive relief.

We dismiss both appeals. We do so because a final, appealable judgment has not been entered due to a fatal imprecision and indefiniteness in the injunctive language.

On March 16, 1998, Ronald and Marylin Adamson bought land ("tract B") from Thomas A. and Wanda J. Mathis ("Mathis"). Tract B fronts highway 54 in Camden County and lies on the north side of the highway. At the time, Mathis owned adjoining land ("tract A.") which also fronts on highway 54 and lies northeast of tract B.

On the day Mathis conveyed tract B to the Adamsons by warranty deed, they used a separate document entitled "driveway easement" to grant the Adamsons a "right of ingress and egress ... across a certain existing driveway and parking area [located on tract A]." This March 1998 easement recited that "[t]he size, location and a general description of the said easement is shown in the attached Exhibit C." Exhibit C is a plat of a survey made of the perimeter of the Mathis and Adamson properties. The "existing driveway and parking lot" alluded to in the easement are drawn on the plat in "free-hand" fashion without courses, distances, point of origin, point of termination, width, or other description.

When Ronald bought tract B, he erected a building and began operating a business on the site via the separate entity, Superlube. He put "bay" doors on both the highway side of the structure and the opposite side. The intent was to have vehicles enter one side for servicing and leave through the doors on the other side. Because of hilly terrain on the west side of the site, the rear doors could only be used as intended by driving motor vehicles around the end of the building nearest the boundary line between tract A and B, i.e., around the northeast end of the structure. At the closest point, the northeast wall of the building was within seven feet of the boundary line between these tracts; consequently, customers going to or from the rear of the Superlube building necessarily left the Adamson land (tract B) and drove across part of tract A.

To prepare tract B as a building site, Ronald had to use fill dirt. Even with the fill in place, the only "reasonable" access to the rear of the Superlube building required the use of part of tract A. Consequently, when Ronald filled and paved part of tract B, he also filled and paved that part of tract A needed to get to the rear of his building. At trial, Ronald claimed the intended purpose of the easement was twofold, i.e., grant him use of tract A as needed for access to the back of his building *and* provide a driveway access from highway 54 across tract A to the east boundary of tract B.

In August 1998, Innovative negotiated to buy tract A from Mathis, but balked at the closing because it interpreted the March 1998 easement as covering "20 to 25 percent of the usable land[ ]" on tract A. After Ronald and Marylin Adamson agreed to sign an "amended easement," Innovative completed its purchase of tract A.

The amended easement was recorded on August 21, 1998.[2] Unlike the earlier easement, the amended one said nothing about

---

**2.** The amended easement recites that the parties "intend[ ] to ... replace" the March 1998 easement. Although it is the only document in evidence by which the Adamsons purportedly gave up their March 1998 "Driveway Easement," its sufficiency to accomplish that purpose is not an issue on appeal.

ingress and egress across the "parking area." However, it did grant the Adamsons "a right of ingress and egress along and across a certain existing driveway by common motor vehicles." It also provided that the "[l]ocation of access to Adamson's [sic] land shall be determined by Innovative[;]" that the easement "as granted herein shall be personal to the parties, and . . . not run with the lands[;]" and that the easement would automatically terminate if "either Adamsons or Innovative shall sell, transfer or convey their described lands, or any part thereof." [3] Like the original easement, the amended one sheds no light on the location or width of the intended easement.

Later, (apparently early 1999), Ronald and Marylin divorced. This resulted in Marylin conveying her interest in the Superlube site to Ronald on April 6, 1999.[4]

After Ronald and Marylin divorced, he married Sheryl Adamson ("Sheryl"). On January 26, 2000, Ronald and Sheryl signed and recorded a deed that changed ownership of the Superlube tract to Ronald and Sheryl. Again, this deed did not describe or mention the subject easements nor is there any other document filed purporting to transfer the same. *See* n. 4.

On Thanksgiving Day 2001, Innovative positioned concrete barriers along part of its west property line so as to block Superlube's customers from driving to the back of the Superlube building. From photographic exhibits and testimonial evidence, it appears the driveway connecting Highway 54 with the east boundary of tract B was not blocked; that Innovative only blocked the part of the common boundary

line between tracts A and B that lies immediately east of the Superlube building and north of said building for approximately sixty feet. Placement of these barriers led Superlube to sue for their removal and damages for lost profits. Later, Ronald joined as a party plaintiff.[5]

Innovative's responsive pleadings alleged, *inter alia,* that the easement was "personal" to Ronald and Marylin, and it terminated when Marylin conveyed her interest to Ronald, or when Ronald signed and recorded a deed transferring an interest to Sheryl. Innovative also alleged the amended easement empowered it to choose the easement location; consequently, it could partially barricade the boundary line as it did.

The trial court permanently enjoined Innovative from "blocking Plaintiffs' use of the easement along the existing driveway as described in the Amended Driveway Easement of record." It did so after finding that

"[Ronald] and Innovative . . . entered into an Amended Driveway easement . . . with the intent to allow [Superlube and Ronald] to access the rear of [tract "B"] via said easement.

"Further, that [Innovative] does not have the right to change the location of the access once said access was determined.

"Further, that the transfers of the property by [Ronald] due to a subsequent dissolution and remarriage have no affect [sic] on the existence of the easement granted."

---

3. We note, however, that another paragraph thereof provided the easement "shall be a burden upon Innovative's . . . lands and a benefit to Adamsons' . . . lands."

4. Marylin's deed to Ronald does not describe or refer to either the March 1998 easement

from Mathis or the August 1998 easement from Innovative.

5. Neither Sheryl (Ronald's present wife) nor his former wife, Marylin, are parties to this litigation.

The judgment also denied Plaintiffs' claim for damages and attorney fees.[6]

These appeals followed.

Before deciding if the points relied on have merit, we are obliged to consider whether the judgment is a final judgment for purposes of appeal, since absent a final judgment, this court has no appellate jurisdiction. *Turkey Mountain Airport v. Estate of Faler,* 82 S.W.3d 233, 235[5] (Mo. App.2002).

"An essential requirement of a final judgment is that it be sufficiently certain in its terms so that the judgment may be enforced in the manner provided by law. In order to comply with this requirement, the judgment must adjudicate the controversy to a conclusion which permits issuing and processing of executions or other court orders seeking to enforce the judgment, without the need for external proof and another hearing."

*Four Seasons Lakesites v. Dungan,* 781 S.W.2d 269, 271[1] (Mo.App.1989).

The requirement of a final, appealable judgment, namely that it be clear, precise, and contain definite terms, applies to a judgment that grants permanent injunctive relief in a dispute over an easement of ingress and egress. *Sanford v.* *Wilson,* 764 S.W.2d 715, 719[6] (Mo.App. 1989). *See Turkey Mountain Airport,* 82 S.W.3d at 235; *Wyma v. Kauffman,* 665 S.W.2d 82, 84 (Mo.App.1984).[7] As explained in *Allen v. Smith,* 375 S.W.2d 874, 882 (Mo.App.1964):

"[I]t may be stated as a general rule that, in a suit to establish or protect privileges with respect to a right of way the location and limits of which are in dispute, 'the right of way involved should be definitely described in the judgment, at least so that its location, with the aid of such description, could readily be located; and the width of the way should be made clear.' 28 C.J.S. Easements § 113b, p. 819."

Here, the trial court's judgment purports to grant injunctive relief by referencing a document that does not describe with clarity, precision, and specificity the extent or location of the subject easement.[8] Although Exhibit C contains a hand-drawn single line denominated "driveway," it lacks courses, distances, point of origin, point of termination, or any designation of length or width. More than that, Exhibit C contains *nothing* that references or purports to describe an easement where Innovative put the concrete

6. The judgment does not expressly address or dispose of Innovative's counterclaim for damages for trespass.

7. The Supreme Court of Missouri, via rule, confirms the critical need for clear, precise, and definite terms in a judgment granting injunctive relief. Thus, Rule 92.02(e) provides that "[e]very order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the petition or other document, the act or acts sought to be restrained."

8. When, as here, an easement is granted in general terms without a definite location and description, "'the course over which it is to be exercised can be fixed in either of two ways, that is, by express agreement or by a selection that can be inferred by proof of the use of a particular way.'" *Helgeson v. Ochs,* 988 S.W.2d 545, 548[4] (Mo.App.1999) (quoting *Edward Runge Land Co. v. Busch,* 594 S.W.2d 647, 650 (Mo.App.1980)). This is not a case where the parties agreed on the location of the easement. Apparently, the trial court looked at evidence about what part of tract A Plaintiffs had used for three years to infer where the easement lay, but wholly failed to require Plaintiffs to present a description of what they had elected to use.

barriers, i.e., along that part of the common boundary line between tracts A and B that lies immediately east of the Superlube building and north of said building for approximately sixty feet. Did the trial court intend to grant injunctive relief for only that part of the tract A–B boundary line last mentioned, or did it intend to also enjoin Innovative from blocking the "driveway" as drawn on Exhibit C? As the judgment presently stands, how can anyone know what part of tract A Innovative can use without violating the court's order? These questions are unanswerable from this record. Although the trial court ruled Innovative had no right to change the location of the access "once said access was determined[,]" neither this court nor the parties can discern what access the trial court found existed. Until the ambiguity is resolved, neither this court nor the parties can know what the trial court intended to enjoin. As additional evidence and another hearing is required to resolve the ambiguity in the judgment, it is not a final appealable judgment. *Turkey Mountain Airport*, 82 S.W.3d at 235; *Wyma v. Kauffman*, 665 S.W.2d at 84.

Lacking a final judgment, the appeals are dismissed as premature. The case is remanded for further proceedings consistent with this opinion, after which a complete and final judgment consistent with this opinion shall be entered, from which an appeal will lie.[9] Under the circumstances, we express no opinion as to

the merit, or lack thereof, of the points raised by Plaintiffs and by Innovative.

PREWITT, P.J. and RAHMEYER, C.J., concur.

---

9. On remand, additional potential issues about judgment finality should be considered. First, the judgment entered did not expressly adjudicate Innovative's counterclaim that sounds in trespass. Second, arguably, Marylin Adamson (Ronald's ex-wife) is still part owner of record of the easement granted by the March 1998 document. Since the trial court ruled that transfers of tract B by Ronald had no "affect [sic] on the existence of the easement granted[,]" consideration should be given to whether she is an indispensable party to this litigation. *See* Rule 52.04(a)(2)(i) and (ii). Failure to join an indispensable party "is so fundamental and jurisdictional as to require its consideration by this court whether raised by the parties or not." *Spellerberg v. Huhn*, 672 S.W.2d 728, 729[1] (Mo.App. 1984).