**R.G. EDMONDSON, Trustee of the Jewell Edmondson Testamentary Trust, Appellant/Cross–Respondent,**

v.

**Doug EDWARDS and Sandra Edwards, Respondents/Cross–Appellants.**

**Nos. SD 28765, SD 28810.**

Missouri Court of Appeals, Southern District, Division One.

April 3, 2009.

Donald L. Cupps, Ellis, Cupps & Cole, P.C. and Darlene Parrigon, Cassville, for Appellant.

J. Michael Riehn, Law Office of J. Michael Riehn, P.C., Cassville, for Respondents.

ROBERT S. BARNEY, Judge.

Appellant/Cross–Respondent R.G. Edmondson, Trustee of the Jewell Edmondson Trust ("Plaintiff") (No. 28765), appeals from the trial court's "Orders Upon Post Trial Motions and Amended Judgment" ("the Amended Judgment") entered on October 2, 2007. Respondents/Cross–Appellants Doug Edwards ("Mr. Edwards") and Sandra Edwards (collectively "Defendants") (No. 28810) appeal from the trial court's "Judgment" ("the Judgment") filed June 21, 2007. Plaintiff asserts four points of trial court error and Defendants assert two points of trial court error.[1]

These appeals arise from approximately seven years of protracted litigation by the parties, who are adjoining landowners. Due to the nature of the litigation, involving four, separate judgments relating to injunctive relief, contemptuous behavior and the imposition of per diem fines, the record in this matter is rather convoluted.[2] It first reveals that Defendants dammed up Brock Branch Spring in Barry County to create a pond[3] on their property which resulted in a loss of water flow to Plaintiff's land such that Plaintiff was unable to water his livestock sufficiently. Plaintiff then filed a petition with the trial court requesting an injunction ordering Defendants to dismantle the pond to restore water flow to Plaintiff's property and damages for the expenses incurred in having to obtain water for his livestock. In a judgment entered June 27, 2002, in part pertinent to this appeal, the trial court "ordered and adjudged that ... Defendants be permanently enjoined and prohibited from maintaining the pond impounding the spring...." The trial court also directed Defendants "to demolish, destroy, or remove the pond and restore the stream bed and flow to the conditions existing prior to the construction of the pond[ ]."

In order to effectuate its orders, the trial court set out that if Defendants failed to comply with its orders by July 27, 2002, then Defendants "shall be subject to contempt and ordered to pay ... Plaintiff the sum of $50.00 per day from and after July 27, 2002, until such time as the pond is demolished ... and the stream bed is restored." This judgment was appealed to this Court by Defendants and the trial court's judgment of June 27, 2002, was affirmed on August 15, 2003. *See Edmondson*, 111 S.W.3d at 910.

On September 3, 2003, Plaintiff filed an "Amended Motion for Contempt" in which Plaintiff asserted Defendants had not complied with the trial court's order to restore water flow to Plaintiff's property and should be held in contempt of court. The motion also requested a monetary judgment of "$50.00 per day from July 27, 2002 ..." until water flow was restored.

Thereafter, on November 13, 2003, Defendants filed a "Motion to Dissolve Preliminary and/or Permanent Injunction." In this motion, Defendants asserted the

---

1. The appeals were consolidated by this Court for purposes of disposition.

2. This Court took some of the factual information in this opinion from a previous appeal in this matter, *Edmondson v. Edwards*, 111 S.W.3d 906 (Mo.App.2003), and we adopt these facts without citation.

3. The pond at issue is approximately "[s]eventenths of an acre" and has a depth of two to two and a half feet. Apparently there was a second pond constructed at the same time as the one at issue; however, it is only vaguely mentioned in the record before this Court and does not appear to be at issue.

trial court's injunction ordered them "to dismantle the dam placed across Brock Branch [Spring] and to restore the flow of Brock Branch [Spring] to its natural condition in order for Plaintiff to be allowed reasonable use of the water to water cattle;" however, Plaintiff "had a well drilled on his property in order to obtain water for his cattle...." Accordingly, Defendants argued the injunction should be dissolved and the $50.00 per diem penalty rescinded because "Plaintiff no longer ha[d] a need for a reasonable use for the water in Brock Branch [Spring]...."

A hearing was held January 16, 2004, on Plaintiff's motion for contempt and Defendants' motion to dissolve the injunction. Thereafter, the trial court entered a March 16, 2004, judgment which found Defendants had failed to destroy the pond despite the trial court's previous orders to do so. The trial court also found such actions to be "willful, intentional, and contumacious" such that Defendants were in contempt of court and denied Defendants' request to dissolve the injunction. The trial court also determined and ordered that Defendants owed Plaintiff "for the period of July 27, 2002[,] through January 16, 2004, ... the sum of $26,850.00 plus $50.00 per day from January 17, 2004[,] and continuing thereafter." The trial court, likewise, awarded Plaintiff attorney fees in the amount of $1,800.00 and ordered that the "matter be reviewed on September 21, 2004 ... to ascertain whether or not Defendants have complied with this [c]ourt's order. Execution may issue." [4]

On June 25, 2004, Defendants filed a second "Motion to Dissolve Preliminary and/or Permanent Injunction." In this motion, Defendants asserted they installed "a diversion ditch that diverted the water around the pond and back to Brock Branch [Spring]," thus, restoring the flow of water to Plaintiff's property.[5] Accordingly, Defendants requested the injunction and the $50.00 per diem penalty be dissolved. A hearing was not held on this motion until February 9, 2007. In the interim, in early September of 2005, Plaintiff again began execution proceedings against Defendants based on the March 16, 2004, judgment. On September 27, 2005, the trial court stayed execution until it could consider Defendants' second motion to dissolve the injunction.

As previously set out, a hearing was held on Defendants' motion on February 9, 2007. The trial court filed its Judgment on June 21, 2007. The Judgment, which recited Defendants' "non-compliance with the original judgment [and] non-compliance with the contempt directives," found Defendants' actions in failing to demolish the pond were "willful, intentional and contumacious and assesse[d] the $50.00 a day penalty from March 17, 2004, to this date." The Judgment also denied Defendants' motion to dissolve the injunction and set aside the previous order to quash execution and halt garnishment proceedings. Additionally, the Judgment set out:

> IT IS FURTHER ORDERED AND ADJUDGED that [D]efendants ... are found to be in contempt of this court from March 17, 2004, through June 20, 2007[,] and the monetary penalty being

---

**4.** As best we discern, Plaintiff collected $26,850.00 from Defendants.

**5.** Apparently this diversion ditch was successful in restoring some water flow to Plaintiff's property. With that being said, in the summer of 2004 Defendants experienced some sort of muskrat invasion and the digging from these animals interfered with the integrity of the diversion ditch causing many leaks. Subsequent to hiring a professional trapper and after themselves having killed several muskrats, Defendants were able to eradicate the muskrats and restore much of the water flow to the diversion ditch.

determined to be in the sum of $59,-500[.00].

IT IS FURTHER ORDERED that [D]efendants may purge themselves of such contempt by demolishing the pond by July 20, 2007. For failure to do so, execution may issue.

Costs are assessed to [D]efendants.

On July 3, 2007, Plaintiff filed a "Motion for New Trial/Motion to Amend Judgment pursuant to Missouri Civil Rule 78.04," and on August 20, 2007, Plaintiff filed a "Motion to Enforce Contempt Judgment or in the Alternative to Assess Damages and Award Plaintiff Damages and For Monetary Judgment Against ... Defendants for Contempt."[6] Argument was held on these motions and on October 2, 2007, the trial court entered its Amended Judgment. The Amended Judgment recited the following:

> Plaintiff further maintains that the Court cannot allow Defendants to purge themselves of contempt for the additional monetary penalty of $59,500.00. In the alternative, Plaintiff maintains that given the chance to purge themselves of contempt, Defendants failed to do so by the July 20, 2007, date.... Argument disclosed that Defendants did not take action concerning the pond till near the deadline date of July 20.... Arguably, Defendants did not commence to drain the pond [until] July 17, which would follow Defendants' pattern of doing little or nothing to comply with the Court's previous directives. The parties generally concede the pond has been drained but now holds runoff water as a result of recent heavy rains. The Court in its Judgment of June 27, 2002, ordered Defendants to 'demolish, destroy or remove the pond and restore the stream bed and flow to the conditions existing prior to the construction of the pond[ ].' The court in its Judgment [of June 21, 2007]

> directed Defendants to purge themselves of contempt by 'demolishing' the pond which clearly has not been done.... However, the Court questions its ability to make the conditions of purging more stringent tha[n] the original Judgment of June 27, 2002. The Court will find there has been substantial compliance and Defendants have purged themselves of contempt by removing the pond.

> While the pond had been drained and removed, the Court will not dissolve the injunction which might tempt Defendants to refill the pond and invite a repeat of this protracted litigation.

> IT IS THEREFORE ORDERED that Plaintiff's Motion for New Trial is overruled and denied.

> IT IS FURTHER ORDERED that Plaintiff's Motion to Amend Judgment be sustained in that the Court should have allowed evidence of attorney fees and litigation expenses and ... finds that Plaintiff should have judgment against Defendants ... for reasonably and necessarily incurred attorney fees of $12,860.10 and litigation expenses of $709.23 for which execution may issue.

> IT IS FURTHER ORDERED that the monetary penalty of $59,500.00 assessed against Defendants ... be set aside since Defendants have removed the pond by draining it and have purged themselves of this Court's finding of contempt.

The instant appeals by both Plaintiff and Defendants followed.

■ At the outset we note the present appeals are plagued by an important issue regarding the finality of the Judgment dated June 21, 2007. We begin with Defendants' cross-appeal which is notably aimed at the Judgment filed on June 21, 2007, as

---

**6.** All rule references are to Missouri Court Rules (2007).

opposed to the Amended Judgment dated October 2, 2007.[7] Likewise, Plaintiff's second point relied on also takes issue with the June 21, 2007, Judgment.[8]

■ This Court is obligated to determine its authority *sua sponte* before considering claims raised on appeal. *In re Estate of Shaw,* 256 S.W.3d 72, 74 (Mo. banc 2008). In order for an appeal to lie, there must be a final judgment or order. *Zarbo v. Zarbo,* 169 S.W.3d 555, 556 (Mo. App.2005); § 512.020, RSMo 2000. "Like other judgments, a civil contempt order must be final before it may be appealed." *Cibulka v. Cibulka,* 190 S.W.3d 532, 533 (Mo.App.2006). "An appealable judgment resolves all issues in a case, leaving nothing for future determination." *Gibson v. Brewer,* 952 S.W.2d 239, 244 (Mo. banc 1997). "For purposes of appeal, a civil contempt order is not final until 'enforced.'" *In re Marriage of Crow and Gilmore,* 103 S.W.3d 778, 781 (Mo. banc 2003) (quoting *Union Hill Homes Ass'n Inc. v. RET Development Corp.,* 83 S.W.3d 87, 92 (Mo.App.2002)).

The Judgment filed June 21, 2007, contains the following concluding paragraphs:

IT IS FURTHER ORDERED AND ADJUDGED that [D]efendants ... are found to be in contempt of this court from March 17, 2004, through June 20, 2007[,] and the monetary penalty being determined to be in the sum of $59,-500[.00].

IT IS FURTHER ORDERED that [D]efendants may purge themselves of such contempt by demolishing the pond

by *July 20, 2007.* For failure to do so, execution may issue.

(Emphasis added).

■ This Judgment is not final for purposes of appeal for several reasons. First, the purported Judgment is not enforceable as written. "'It is well established law that to be valid [and enforceable], a judgment must be susceptible of enforcement in the manner provided by law.'" *American Western Bonding Co., Inc. v. United Surety Agents, Inc.,* 134 S.W.3d 700, 704 (Mo. App.2004) (quoting *Gerard v. Kodner,* 468 S.W.2d 677, 681 (Mo.App.1971)). "'In order to comply with this requirement, the judgment must adjudicate the controversy to a conclusion which permits issuing and processing of executions or other court orders seeking to enforce the judgment, without the need for external proof and another hearing.'" *Superlube Inc. v. Innovative Real Estate, Inc.,* 94 S.W.3d 480, 484 (Mo.App.2003) (quoting *Four Seasons Lakesites v. Dungan,* 781 S.W.2d 269, 271 (Mo.App.1989)); *see also Commerce Bank v. Green,* 760 S.W.2d 602, 604 (Mo.App. 1988).

Here, the purported Judgment granted Defendants the option of purging themselves of their contempt within thirty days of entry of the purported Judgment. In order to determine if they complied, it was necessary for the trial court to have entertained "'external proof and another hearing'" in order to make this determination. *Superlube,* 94 S.W.3d at 484 (quoting *Four Seasons,* 781 S.W.2d at 271). The Judgment is too indefinite to be final in that it fails to adjudicate the controversy to a

---

**7.** This Court granted Defendants' request to file a late notice of appeal in this matter. *See* Rule 81.07.

**8.** As best we discern Plaintiff's second point, Plaintiff maintains that the June 21, 2007, judgment constituted an improper modifica-

tion of prior judgments entered in this matter. Accordingly, Plaintiff's Point II will be addressed in connection with Defendants' asserted points relied on relating to errors contained in the Judgment of June 21, 2007. Plaintiff's remaining points of error shall be addressed later in the opinion.

conclusion without the need for external proof and another hearing. *See American Western*, 134 S.W.3d at 704.

■ Second, the purported Judgment is conditioned on acts which may or may not occur in the future. "Missouri appellate courts have long recognized that conditional judgments 'which do not become operative unless and until the occurrence of conditions are not final for purposes of appeal.'" *Schroff v. Smart*, 73 S.W.3d 28, 30 (Mo.App.2002) (quoting *Beck v. Hoel–Steffen Constr. Co.*, 586 S.W.2d 818 (Mo. App.1979)) (holding that "[t]he purported judgment conditioned the rights of the parties upon compliance with certain provisions therein stated. Thus, it was not a final judgment"). "Generally, where the enforcement of a judgment is conditional upon the occurrence or nonoccurrence of future acts, the performance or nonperformance of which is outside the record, the judgment is deemed indefinite and unenforceable." *B.J.M.T. b/n/f McClure v. Teff*, 21 S.W.3d 154, 156 (Mo.App.2000). This is the exact scenario found in the present matter. The purported Judgment was written such that it became operative or inoperative based on acts which might occur in the future and would be outside the purview of the court. *See id.*; *Schroff*, 73 S.W.3d at 31. It did not operate *in praesenti*.

The purported Judgment entered on June 21, 2007, was not a final judgment and, per Rule 74.02, remained merely an order of the trial court. Therefore, Defendants' points on appeal and Plaintiff's Point II are un-reviewable. *See* § 512.020, RSMo Cum.Supp.2005. Accordingly, appeal (No. 28810) is dismissed.

Turning now to Plaintiff's remaining three points on appeal (No. 28765), it is clear Plaintiff's points are directed to the Amended Judgment dated October 2, 2007, entered chronologically later by the trial court.[9]

■ Plaintiff asserts in Point I that "the trial court erred in [the Amended Judgment by] abrogating the $50.00 per day monetary judgment in favor of the Plaintiff against . . . Defendants . . .;" in Point III that the trial court made a mathematical error in the Amended Judgment "in calculating the judgment at $50.00 per day from January 16, 2004[,] until June 20, 2007 . . .;" and in Point IV that the trial court "erred in [the Amended Judgment by] finding . . . Defendants had purged themselves of contempt by 'substantial compliance' with the court's [J]udgment. . . ."

In this court-tried case, we must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Rule 84.13(d); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy*, 536 S.W.2d at 32; *see Southern Star Central Gas Pipeline, Inc. v. Murray*, 190 S.W.3d 423, 429 (Mo.App.2006).

Here, the trial court originally assessed the $50.00 per diem monetary penalty against Defendants in its June 27, 2002, judgment. The trial court at that time stated Defendants "shall be subject to contempt and ordered to pay to the Plaintiff the sum of $50.00 per day from and after July 27, 2002, until such time as the pond is demolished, destroyed or removed and

9. Based on our finding above regarding the lack of finality of the June 21, 2007, Judgment, for the sake of clarity, we will continue to refer to the judgment dated October 2, 2007, as the "Amended Judgment" although by operation of law it is the sole judgment in this matter.

the stream bed is restored." This judgment was a final judgment which was appealed to this Court and affirmed on appeal.

Following this judgment, Plaintiff filed an "Amended Motion for Contempt" and Defendants' filed a "Motion to Dissolve Preliminary and/or Permanent Injunction." A hearing was held on January 16, 2004, and the trial court entered its judgment on March 16, 2004. The trial court found Defendants failed to remove the pond by the date stated in the June 27, 2002, judgment such that "for the period from July 27, 2002[,] through January 16, 2004[,] Plaintiff [has] Judgment against [Defendants] . . . in the sum of $26,850.00 *plus $50.00 per day from January 17, 2004[,] and continuing thereafter."* (Emphasis added.) This judgment of March 16, 2004, was a final judgment and no appeal was taken from the judgment.[10]

Defendants filed another motion to dissolve the injunction on June 25, 2004, and Plaintiff issued execution applications on September 2, 2005, and September 6, 2005. The trial court then stayed execution pending a hearing on Defendants' motion. The purported Judgment of June 21, 2007, discussed at length above, was then entered. That purported judgment calculated that Defendants' outstanding monetary penalty had accrued to the amount of $59,500.00 and continued to accrue at the rate of $50.00 per diem resulting from Defendants' continued contempt in failing to destroy the pond.

However, the trial court then entered its Amended Judgment on October 2, 2007. As already stated, this judgment *abrogated* the $59,500.00 monetary penalty previously imposed which had resulted from the violation of the trial court's

March 16, 2004, judgment. Additionally, the trial court terminated the $50.00 per diem fine. " 'Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered. Its purpose is to coerce compliance with the relief granted.' " *In re Marriage of Crow and Gilmore,* 103 S.W.3d 778, 780 (Mo. banc 2003) (quoting *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 578 (Mo. banc 1994)). "A per diem fine is a proper method of coercing compliance with a court order regardless of whether it also serves a reimbursement or punishment function." *In re Estate of Zimmerman,* 820 S.W.2d 617, 620 (Mo.App.1991).

Civil contempt orders are considered to be final judgments when they are " 'enforced.' " *In re Marriage of Crow,* 103 S.W.3d at 781 (quoting *Union Hill Homes Ass'n, Inc. v. RET Dev. Corp.,* 83 S.W.3d 87, 92 (Mo.App.2002)). "When 'enforcement' occurs depends on the remedy." *Id.* "When the remedy is a fine, the contempt order is 'enforced' when the moving party executes on the fine." *Id.*; see *Forbes v. Forbes,* 133 S.W.3d 508, 512 (Mo.App.2004).

In *Zimmerman,* 820 S.W.2d at 619, a judgment was entered on May 29, 1990, by the trial court which "gave [the appellant] until June 19, 1990, to purge herself of contempt or be fined $100 per day and committed to the Warren County jail." Thereafter, the respondents, on July 10, 1990, "wrote the court alleging that [the appellant] had not purged herself of contempt by June 19, 1990, as required in the May 29th contempt judgment" and "requested that the court execute the judgment to enforce its terms." *Id.* At a hearing on the respondents' motion on August 17, 1990, the trial court also "conducted

---

**10.** Garnishment proceedings were initiated by Plaintiff and "Execution/Garnishment Application[s] and Order[s]" were filed on March 25, 2004; May 12, 2004; and July 6, 2004. Plaintiff collected $26,850.00 from Respondents.

the examination of judgment debtor and signed [a] warrant of commitment." *Id.* "During the course of these proceedings, the court stated that it had decided that the $100 per day fine contained in the judgment of contempt was excessive as a matter of law upon the facts of the case and purported to orally reduce it to $25 per day." *Id.*

On appeal, the appellant in *Zimmerman* argued the assessment of the $100.00 a per diem fine was erroneous because it "bore [no] relation" to the damages in the case, "was not contained in the warrant of commitment and was later [orally] modified by the court." *Zimmerman,* 820 S.W.2d at 620. The appellate court reasoned, however, that the appellant's "contention that the court modified the amount of the fine orally [was] without merit." The court determined "[t]he fine . . . set forth in the judgment of contempt on May 29th . . . became final under Rule 75.01 thirty days later. The court was thus without [authority] to modify it on August 17th." *Id.*

The same is true in the present matter. The $50.00 per diem fine for Defendants' contempt was again assessed in the March 16, 2004, judgment which set out that the per diem fine would commence on January 17, 2004. That judgment was final thirty days later per Rule 75.01, Missouri Court Rules (2004). The fine continued to accrue on a daily basis because Defendants continued to disobey the trial court's order to destroy the pond. The fine accumulation could not be retrospectively modified by the trial court in the Amended Judgment of October 2, 2007.[11] *Zimmerman,* 820 S.W.2d at 620. The trial court's abrogation of the accumulated per diem fine in

this matter was erroneous and is reversed. Plaintiff's Point I has merit.

 Plaintiff's third point relied on asserts the trial court made a mathematical error in determining the accumulated contempt fine was $59,500.00 "instead of $62,500.00 . . . in that it should have been [calculated based on] one thousand two hundred eighty days, until July 20, 2007. . . ."

Here, the $50.00 per diem fine in this matter began accumulating on January 17, 2004, the day the March 16, 2004, judgment set out that it began accumulating, and it was to cease accumulating on the date the pond was demolished, destroyed, or removed. However, the Amended Judgment gave Defendants until July 20, 2007, to destroy the pond and it found they "did not commence to drain the pond [until] July 17, [2007]."

The problem this Court has in determining whether the trial court's calculations were in error is that the trial court failed to set out in its Amended Judgment a specific date upon which the pond was destroyed. It is not enough that the trial court found Defendants "commence[d]" destroying the pond on July 17, 2007. To accurately determine the total monetary penalty owed to Plaintiff for Defendants' contempt there must be a date certain set out by the trial court. As such, this matter is reversed and the cause remanded to the trial court to determine the actual date of the pond's destruction. Further, the trial court should undertake a new mathematical calculation dating back to January 17, 2004, in consonance with the judgment dated March 16, 2004. The trial court

11. We are not holding the trial court had no power to halt the further accumulation of the $50.00 per diem fine upon Respondents' removal of the pond. It is clear the trial court had such a power in that the fine was instituted to encourage Respondents to remove the pond and once the pond was removed the fine could also be removed. Our determination relates only to the trial court's abrogation of the fines which had accumulated between January 17, 2004, and the October 2, 2007 judgment.

may take additional evidence as necessary to make this determination and enter a monetary judgment against Defendants accordingly. Plaintiff's third point is granted.

Lastly, we examine Plaintiff's fourth point relied on which asserts the trial court erred in "finding [Defendants] purged themselves of contempt...." Having already found the trial court erred in allowing Defendants to be purged of contempt and in abrogating the accumulated monetary penalty, we need not address Plaintiff's fourth point relied on.

Accordingly, the trial court's abrogation of the accumulated monetary contempt penalty is reversed and the cause is remanded so the trial court may take additional evidence to determine whether Defendants complied with the trial court's previous orders to destroy the pond and restore the stream bed and, if so, the actual date upon which that action occurred. Judgment should then be entered in accordance with this opinion. In all other respects not inconsistent with the foregoing, the Amended Judgment is affirmed.

BATES and BURRELL, JJ., concur.